**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**ARNOLD LAMARR WEESE** and
**DAVID KENT MOSS**,

        Plaintiffs,

        v.                                                        **Civil Action No. 2:13-CV-41**
                                                                               (Judge Bailey)

**SAVICORP, INC.**,
**SERGE V. MONROS**, and
**CRAIG WALDROP**,

        Defendants.

## ORDER DENYING DEFENDANT SAVICORP, INC. AND DEFENDANT SERGE V. MONROS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Currently pending before this Court is Defendant Savicorp, Inc. and Defendant Serge V. Monros' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Doc. 19], filed September 18, 2013. The plaintiffs filed their response on October 5, 2013 [Doc. 21], and defendants Savicorp and Monros ("Defendants") filed their reply on October 15, 2013 [Doc. 24]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' motion should be **DENIED**.

**I.    Facts**

In June and July of 2011, plaintiffs Arnold LaMarr Weese and David Kent Moss, both citizens of West Virginia, entered into a series of contracts with defendant Serge Monros, California citizen and CEO of defendant SaviCorp, Inc., for the purchase of 90,000,000 shares of SaviCorp common stock at a total price of $450,000. Compl. at ¶¶ 1–2, 4, 21–24.

1

SaviCorp is incorporated under Nevada law, with its principal place of business in California. *Id.* at ¶ 3.

Plaintiffs learned of SaviCorp through Weese's membership in Stocktriggers, a members-only stock trading website operated by defendant Craig Waldrop. *Id.* at ¶ 12. After paying a membership fee, Stocktriggers members receive advice and information regarding stock trades and investments. *Id.* In November 2010, Waldrop sent a message to Weese through the Stocktriggers website to gauge Weese's interest in a "potentially life changing" investment opportunity in SaviCorp. *Id.* at ¶ 14–15. Because Waldrop was looking for additional investors, Weese told plaintiff Moss about the SaviCorp opportunity, and then notified Waldrop that all communications about SaviCorp would be passed along to Moss. *Id.* at ¶ 16–17.

Using the Stocktriggers website, on December 23, 2010, Waldrop sent Weese a prospectus, which Waldrop prepared, labeled "Confidential Company Information." Compl. at ¶ 31; [Doc. 1 Ex. E]. The prospectus discusses SaviCorp, SaviCorp's flagship product, the DynoValve, and SaviCorp's past, current, and projected stock performance in detail. Compl. at ¶ 31; [Doc. 1 Ex. E]. Plaintiffs allege that many of the claims in that prospectus were false and misleading—including multiple, explicit representations regarding then-existing revenue, capital, debts, and contracts for marketing and distribution of the DynoValve—and that Waldrop knowingly and willfully concealed the fraudulent and misleading nature of those representations from plaintiffs. *See* Compl. at ¶¶ 58–72. Plaintiffs contend that SaviCorp and Monros either knew, or were recklessly indifferent to, Waldrop's actions, that Waldrop was either SaviCorp's actual or apparent agent, that both Waldrop and Monros were financially motivated to mislead plaintiffs, and that SaviCorp is

therefore vicariously liable for Waldrop's alleged fraudulent misrepresentations. *Id.* at ¶¶ 60–61, 69, 76–80.

Approximately seven months of correspondence between the parties culminated in the execution of four contracts, two between Weese and Monroe and two between Moss and Monroe, for purchase of the aforementioned 90,000,000 SaviCorp shares. *See* [Doc. 1 Exs. A–D]. Waldrop sent the stock purchase contracts, and provided SaviCorp's bank account information, to Weese and Monroe via email. [Doc. 21 Ex. A1 at 58]. In each instance, Weese and Moss paid the agreed-upon purchase price to defendants by wire transfer, drawn on plaintiffs' banks located in this forum. Compl. at ¶¶ 21–24. Unfortunately, plaintiffs' investment did not bear fruit, as they have suffered "the near total loss" of their $450,000. Compl. at ¶¶ 84–85. Plaintiffs allege that Waldrop's false and misleading statements and his failure to disclose material, negative information about SaviCorp were highly relevant to plaintiffs' decision whether to invest and thus caused plaintiffs' loss, entitling them to damages. Compl. at ¶¶ 72–73.

## II. <u>Procedural History</u>

Plaintiffs filed their Complaint [Doc. 1] on June 6, 2013. Defendants SaviCorp, Inc. and Serge V. Monros stipulated to the sufficiency of service of process, made by hand delivery in California, on August 12, 2013; defendant Craig Waldrop was served with process through the West Virginia Secretary of State on September 5, 2013. [Docs. 5, 6, 18]. Defendants SaviCorp and Monros filed the pending Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue [Doc. 19] on September 18, 2013. In their Motion, SaviCorp and Monros argue that this Court lacks personal jurisdiction over them

3

because (1) Waldrop was not SaviCorp's actual or apparent agent,[1] and (2) both SaviCorp and Monros lack sufficient minimum contacts with the state of West Virginia.  Further, SaviCorp and Monros argue that venue is improper in this district because (1) none of the events giving rise to plaintiffs' claim occurred in West Virginia, and (2) defendants do not transact business in West Virginia and can neither be found nor reside in West Virginia. This Court concludes that plaintiffs have made a sufficient showing to survive defendants' challenges.

**III.      Legal Standard**

When a federal court's personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), it is ultimately the plaintiff's burden to prove that jurisdiction exists by a preponderance of the evidence.  ***Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.***, 334 F.3d 390, 396 (4th Cir. 2003) (citing ***Mylan Labs., Inc. v Akzo, N.V.***, 2 F.3d 56 (4th Cir. 1993)).  When, however, a district court decides a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction.  ***Id.***

The court may consider motion papers, supporting legal memoranda, and the allegations of the complaint when ruling on the jurisdictional challenge.  ***Combs v. Bakker***, 886 F.2d 673, 676 (4th Cir. 1989).  In determining whether the plaintiff has made the

---

[1] West Virginia's long-arm statute allows the assertion of personal jurisdiction over a nonresident defendant where the defendant or his "duly authorized agent" causes tortious injury in West Virginia, provided he also regularly does business, solicits business, or engages in any other course of conduct in West Virginia, among other specified acts. W. Va. Code § 56-3-33(a).  As explained below, however, it is the federal Securities Exchange Act of 1934, not the West Virginia Code, that provides the relevant service-of-process provision in this matter.

4

requisite showing, the court must construe all relevant allegations of the pleadings and draw all reasonable inferences in favor of the existence of jurisdiction. *Id.*

All the above standards likewise apply when the court considers a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See* **Aggarao v. MOL Ship Mgmt. Co.**, 675 F.3d 355, 365–66 (4th Cir. 2012) (describing the evidence that may be considered, the requirement of a mere prima facie showing, and the construction of the facts in the light most favorable to the plaintiff when ruling on a Rule 12(b)(3) motion).

## IV. Discussion

### A. Personal Jurisdiction

The requirement that a federal court have personal jurisdiction over the defendant before it flows not from Article III, as with federal subject-matter jurisdiction, but from the Due Process Clause. **Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee**, 456 U.S. 694, 702 (1982). Personal jurisdiction protects an individual's liberty interest in not being subjected to the binding judgment of a forum with which that individual has no meaningful ties. **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 471–72 (1985). Before a court may exercise personal jurisdiction over an individual, the procedural requirement of service of process must be met; thus, there is a close connection between a defendant's amenability to service of process and a federal court's ability to assert personal jurisdiction over him. **Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.**, 484 U.S. 97, 104 (1987).

Service of process is governed generally by Rule 4 of the Federal Rules of Civil Procedure. *Id.*; Fed. R. Civ. P. 4. Rule 4(k) provides that service of process on a defendant establishes personal jurisdiction over that defendant "when [service is]

5

authorized by a federal statute." Fed. R. Civ. P. 4(k)(C). Here, the authorizing statute is the Securities Exchange Act of 1934, under which plaintiffs bring their securities fraud claims. The Securities Act authorizes nationwide service of process. 15 U.S.C. § 78aa; *see also* **Omni Capital**, 484 U.S. at 107 (contrasting § 78aa with a federal statute that does not provide for nationwide service). Where Congress authorizes nationwide service, the service of process on a defendant is sufficient to establish personal jurisdiction over that defendant, so long as the assertion of jurisdiction also comports with due process. **ESAB Group, Inc., v. Centricut, Inc.**, 126 F.3d 617, 626 (4th Cir. 1997) (citing **Hogue v. Milodon Eng'g, Inc.**, 736 F.2d 989 (4th Cir. 1984)).

In federal diversity cases, where the underlying right being adjudicated is created by state law, the due process constraint on personal jurisdiction is grounded in the Fourteenth Amendment's Due Process Clause. **Int'l Shoe Co. v. State of Wash.**, 326 U.S. 310, 316 (1945). There, the personal jurisdiction analysis requires application of the familiar "minimum contacts" test developed in **International Shoe** and its progeny. *See* **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 471–72 (1985) (detailing the analysis). In federal-question cases, however, the due process constraint on personal jurisdiction is grounded in the Fifth Amendment's Due Process Clause. **Omni Capital**, 484 U.S. at 103–04.

Where Fifth Amendment due process principles govern the jurisdictional inquiry and a federal statute authorizes nationwide service of process, courts in this Circuit apply a less restrictive "national contacts" test rather than conducting a traditional "minimum contacts" analysis. **Hogue v. Milogon Eng'g, Inc.**, 736 F.2d 989, 991 (4th Cir. 1984) (applying a

6

national contacts test where the claim was brought under the Bankruptcy Act); *ESAB Group*, 126 F.3d at 626–27 (same, under RICO); *Schrader v. Trucking Emps. of N.J. Welfare Fund, Inc.*, 232 F. Supp. 2d 560, 570–71 (M.D. N.C. 2002) (same, under ERISA); *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp 1040, 1045 (E.D. Va. 1997) (same); *Boon Partners v. Advanced Fin. Concepts, Inc.*, 917 F. Supp. 392, 397 (E.D. N.C. 1996) (same, under RICO and the Securities Exchange Act); *see also* *Autoscribe Corp. v. Goldman & Steinberg*, 47 F.3d 1164 at *3 (4th Cir. 1995) (unpublished) ("The Supreme Court has never considered the question, but we, like several of our sister circuits, have held a 'national contacts' standard applicable when federal law authorizes nationwide service of process." (citing *Hogue*, 736 F.2d at 991)).

In applying the national contacts test, the relevant inquiry is not whether the defendant has sufficient minimum contacts with the forum state, but whether the defendant has sufficient contacts with the United States as a whole. *See, e.g.*, *Miller v. Asensio*, 101 F. Supp. 2d 395, 402 (D.S.C. 2000) (collecting cases). Under that test, Fifth Amendment due process principles constrain the court only where asserting personal jurisdiction over the defendant "would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." *Denny's, Inc. v. Cake*, 364 F.3d 521, 524 n.2 (4th Cir. 2004) (citing *ESAB Group*, 126 F.3d at 627). Defendants located within the United States, as here, "must look primarily to federal venue requirements for protection from onerous litigation," *ESAB Group*, 126 F.3d at 627, because "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Id.* (quoting *Republic of*

7

*Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997)).

Defendants' arguments concerning the alleged agency relationship between Waldrop and SaviCorp, the minimum contacts test, general jurisdiction, and specific jurisdiction are thus inapposite to the determination whether this Court may properly assert personal jurisdiction over defendants Weese and SaviCorp. Further, this Court agrees with plaintiffs that *Allison v. Lomas*, 387 F. Supp. 2d 516 (M.D. N.C. 2005), applies the incorrect test. In *Allison*, the court cited two Second Circuit cases for the proposition that even where a federal statute authorizes nationwide service of process, the traditional, *International Shoe* minimum contacts test is applied in determining whether the assertion of personal jurisdiction comports with due process. As evidenced by the foregoing discussion, that is not the approach taken by the Fourth Circuit. *See Denny's, Inc.*, 364 F.3d at 524 n.2; *ESAB Group*, 126 F.3d at 627; *Hogue*, 736 F.2d at 991.

As both SaviCorp and Monros reside and do business within the United States, both plainly have sufficient contacts with the United States as a whole. The only remaining question is whether this Court's assertion of personal jurisdiction over SaviCorp and Monros is one of the "highly unusual" cases in which "extreme inconvenience and unfairness" outweigh Congress' legislative expression of social policy through the vehicle of a nationwide-service statute.[2] This Court concludes that it is not.

While litigating in West Virginia will undoubtedly pose some inconvenience to

---

[2] Many of the federal statutes that authorize nationwide service, such as the Securities Act, the Sherman Antitrust Act, RICO, and ERISA, "are integral parts of major regulatory efforts in substantive areas falling squarely within Congress' enumerated powers under Article I of the Constitution." Wright & Miller et al., 4 Fed. Prac. & Procedure § 1068.1 (3d ed.), at nn.89–92 and surrounding text.

defendants, given their location in California, the burdens defendants identify—in the main, distance and cost—are not so unusual or extreme as to implicate constitutional concerns. Modern means of transportation and communication, of course, have lessened the burden of distant litigation. *Luxembourg*, 119 F.3d at 947–48. Defendants further argue that if Monros is forced to be absent from California during this litigation, SaviCorp will be unable "to fulfill its orders, acquire new business, or meet all of its other business and financial obligations" in his absence. [Doc. 24 at 10]. This Court notes, however, that Monros would have to be temporarily absent for purposes of litigation wherever proceedings took place. Particularly when balanced against the federal interest in adjudicating the securities laws and protecting its citizens from securities fraud in the Internet age, this Court finds that the burdens defendant identifies do not rise to the level of *extreme* inconvenience and unfairness. Accordingly, this court may properly assert personal jurisdiction over defendants SaviCorp and Monros.

### B. Venue

The venue provision of the Securities Exchange Act provides that venue is proper in the district where (1) any act or transaction constituting the violation occurs; (2) the defendant is found; or (3) where the defendant transacts business. 18 U.S.C. § 78aa(a); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 152 (1976). The wording of the provision "is unmistakably broad." *United States v. Johnson*, 510 F. 3d 521, 528 (4th Cir. 2007). Thus, where venue is predicated on an "act or transaction," proper venue "'requires but one act within the forum district which represents more than an immaterial part of the allegedly illegal events.'" *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 445 (D. Del. 2012)

9

(quoting *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 488 (D. Del. 1991)). That single act need not constitute the core of the alleged violation, nor even be illegal in itself. *In re AES Corp. Secs. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003); *Sohns v. Dahl*, 392 F. Supp. 1208, 1215 (W.D. Va. 1975). Further, where the act alleged is the transmission of false or misleading materials into the district, venue will be sustained on that allegation alone, even if the defendant has never been physically present in that district. *Johnson*, 510 F.3d at 525; *Zazzali*, 852 F. Supp. 2d at 445 (citing *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. 1974)).

Plaintiffs argue that venue is proper because an "act or transaction constituting the violation" occurred when Waldrop transmitted the allegedly misleading prospectus into this district. [Doc. 21 at 16]. Because it is undisputed that Waldrop and not defendants Monroe and SaviCorp made that transmission, however, plaintiffs' argument implicates the "co-conspirator" theory of venue. The co-conspirator theory of venue has been held to apply where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of the securities statues; under the theory, where venue is proper as to one participant in the scheme, it is proper as to all. *See, e.g.*, *Zazzali*, 852 F. Supp. at 446 ("It is well established that . . . venue is proper as to all defendants involved in [an] alleged securities fraud even if some of those defendants were not directly involved in the venue-supporting act or transaction within the district." (internal quotations and citations omitted)). In response, defendants contend that plaintiffs' complaint does not make sufficient allegations of a conspiracy to qualify under the venue provision of § 78aa.

Defendants approach the question incorrectly. The moniker "co-conspirator" with

respect to this theory of venue is "somewhat loose[] and inaccurate[]"; the theory applies "regardless of the technical relationship between the participants in th[e] fraudulent scheme." **Rose v. Arkansas Valley Env'tl & Util. Auth.**, 562 F. Supp. 1180, 1211–12 (W.D. Mo. 1983).[3] Conspiracy, as a substantive theory of liability, need not be alleged in the complaint in order for venue to be proper under the co-conspirator theory of venue. *See, e.g.*, **Zazzali**, 852 F. Supp. 2d at 446 & n.10 ("Although referred to as co-conspirator venue, an actual conspiracy does not need to be alleged."); **SEC v. Carroll**, 835 F. Supp. 2d 281, 287 (W.D. Ky. 2011) (applying the theory); Compl. at ¶¶ 59–86, 118–19, **SEC v. Carroll**, 835 F. Supp. 2d 281 (W.D. Ky. 2011) (No. 3:11-cv-165-H) (alleging violations of Section 10(b) and Rule 10b-5 but not alleging conspiracy).

It is clear that Waldrop's actions support venue in this district, as the transmission of allegedly false and misleading materials by a defendant into a district resolves the venue inquiry with respect to that defendant. *See* **Johnson**, 510 F.3d at 525. The question, then, is whether plaintiffs have sufficiently alleged the existence of a common scheme that will support application of the co-conspirator theory of venue. Taking the allegations in the light

---

[3] For this reason, the reasoning of the court in **Equitable Bank v. Finn**, 671 F. Supp. 374, 378 (D. Md. 1987), is incorrect. The **Equitable Bank** court cites to **Rose** for the proposition that "[i]n order for the pleading to satisfy the specificity requirements for the co-conspirator venue theory, it must reach a level of specificity which approaches that required for fraud under Fed. R. Civ. P. 9(b)." 671 F. Supp. at 378 (citing **Rose**, 562 F. Supp. at 1204). The portion of **Rose** cited by the **Equitable Bank** court, however, deals with the pleading requirements for alleging conspiracy as a substantive theory of liability, not with jurisdiction or venue. *See* **Rose**, 562 F. Supp. at 1204–05. In discussing the conspiracy theory of venue, the **Rose** court noted, as explained above, "that an actual conspiracy between the various defendants, as such, is not necessary; . . . an act of aiding and abetting in the forum district will suffice, as would presumably any other sufficient act in furtherance of a fraudulent scheme, regardless of the technical relationship between the participants in that fraudulent scheme." *Id.* at 1212.

most favorable to plaintiffs, this Court concludes that they have.[4]

Plaintiffs allege: (1) the existence of either an actual or apparent agency relationship between Waldrop, SaviCorp, and Monros arising in part from "the use of Waldrop, by SaviCorp and Monros, to conduct all negotiations [related to plaintiffs' stock purchases] on behalf [of] SaviCorp and Monros" and "the continued use of Monros and SaviCorp of Waldrop . . . to communicate with the plaintiffs" after those purchases were made; (2) that Monros retained Waldrop specifically to locate potential investors; (3) a staggering number of allegedly false and misleading statements made both in the prospectus prepared by Waldrop and during the entire course of negotiations related to plaintiffs' SaviCorp stock purchases; (4) that, evidenced by the "extensive and detailed" nature of Waldrop's claims and the "long period" over which they were made, Monros knew of or recklessly

---

[4] In **SEC v. Johnson**, 650 F.3d 710, 713–15 (D.C. Cir. 2011), the D.C. Circuit questioned the vitality of the co-conspirator theory of venue following the Supreme Court's decision in **Central Bank of Denver v. First Interstate Bank of Denver**, 511 U.S. 164 (1994). The argument made to and accepted by the court went as follows. In **Central Bank**, the Supreme Court held that there was no private right of action under § 10(b) of the Securities Exchange Act for aiding and abetting securities fraud, and indeed, implied there could be no cause of action for *any* type of secondary liability that did not require proof of each element of fraud. **Johnson**, 650 F.3d at 714 (citing **Central Bank**, 511 U.S. at 180, 184). After **Central Bank**, Congress enacted § 78t(e), which provides that the SEC may civilly prosecute *aiding and abetting* violations of § 10(b). **Id.**; 15 U.S.C. § 78t(e). Section 78t(e), however, makes no mention of *conspiracy* as a prosecutable offense, and because an allegation of conspiracy, without proof of participation in a fraud, cannot be a basis for liability under **Central Bank**, it likewise cannot be a sufficient basis for venue. In § 78t(a), however, Congress imposed substantive liability on "controlling person[s]"—persons who "control[] any person liable" under the Securities Exchange Act. Furthermore, "[t]he controlling person rule does not exclude application of the common-law principles of agency . . . in an action brought under the 1934 Act." **Cook v. Goldman, Sachs & Co.**, 726 F. Supp. 151, 155–56 (S.D. Tex. 1989). This Court thus declines to adopt the reasoning of the D.C. Circuit and reject the co-conspirator theory of venue outright.

disregarded their fraudulent nature; and (5) that Monros and Waldrop both had a motive to defraud plaintiffs, as both held large numbers of diluted SaviCorp shares. Compl. at ¶¶ 30–80. Defendants, of course, hotly dispute all of these allegations, and in particular those related to the alleged agency relationship. Resolution of those factual disputes, however, would be inappropriate at this very early stage of the litigation. This Court therefore holds that plaintiffs have successfully made the requisite prima facie showing; their allegations suffice to sustain venue in this district.

Consequently, venue is properly laid, and plaintiffs' action may proceed.

## **CONCLUSION**

For the reasons set forth above, this Court concludes that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue should be, and is hereby, **GRANTED IN PART** and **DENIED IN PART**. Further, Plaintiffs' Motion for Leave to File Sur-Reply **[Doc. 28]** is hereby **DENIED AS MOOT**.

It is so **ORDERED.**

The Clerk is hereby directed to transmit copies of this Order to counsel of record herein.

**DATED**: November 13, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE